**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

GUSTAVO MORELOS VALDOVINOS,

       Petitioner,

v.                                                                                  No. 1:26-cv-0338 JB/DLM

KRISTI NOEM, et al.,

       Respondents.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**THIS MATTER** is before the Court on Petitioner Gustavo Morelos Valdovinos's Petition

for Writ of Habeas Corpus filed under 28 U.S.C. § 2241. (Doc. 1.) Petitioner challenges the legality

of his arrest and continued detention, asserting that DHS lacked statutory authority to arrest him

without a warrant under 8 U.S.C. § 1357(a)(2) and that his continued detention without a prompt

judicial probable-cause determination violates the Fourth Amendment. He also raises a

transfer-based access-to-counsel claim.

Having reviewed the record, the parties' submissions, and the governing law, the

undersigned recommends that the Petition be **GRANTED IN PART** to the extent Petitioner seeks

release based on the Fourth Amendment violation; **DENIED IN PART** as to Petitioner's

Administrative Procedure Act (APA) claim; and **DISMISSED IN PART** as to Petitioner's

transfer-based access-to-counsel claim, which falls outside the scope of habeas review. In the

alternative, the undersigned recommends that Respondents be ordered to provide Petitioner with a

prompt individualized bond hearing under 8 U.S.C. § 1226(a).[1]

---

[1] On March 3, 2026, United States District Judge James O. Browning entered an Order of Reference referring this
case to the undersigned "to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal
analysis required to recommend to the Court an ultimate disposition of the case." (Doc. 12.)

## I.      Factual and Procedural Background

Petitioner Gustavo Morelos Valdovinos is a 49-year-old native and citizen of Mexico. (*See* Docs. 1 ¶ 27; 17-2 at 1.) He has lived continuously in the United States since at least 2001 and has three U.S. citizen children who reside in Minnesota. (Docs. 1 ¶¶ 27, 33; 17-2 at 2.) Petitioner has no criminal history. (*See* Docs. 1 ¶ 51; 17-2 at 2.)

On January 10, 2026, U.S. Immigration and Customs Enforcement (ICE) agents encountered Petitioner while he was driving on Interstate 94 near the Lyndale exit in Minneapolis, Minnesota.[2] (Doc. 1 ¶ 31.) Petitioner pulled over believing local law enforcement was attempting to stop him. (*Id.*) Three ICE agents approached his vehicle, questioned him, and directed him to exit the car. (*Id.*) Agents then arrested Petitioner and transported him to the Whipple Federal Building in Fort Snelling, Minnesota. (*Id.*) According to Department of Homeland Security (DHS) encounter records, no warrant was served at the time of arrest. (*See* Doc. 18 at 1–2 (citing Doc. 17-2 at 1 ("Warrant served by Warrant Service Officer (WSO)? N/A")).)

Petitioner remained at the Whipple Building until January 11, 2026, when ICE transferred him to the El Paso East Montana facility. (Doc. 1 ¶¶ 20, 31.) On January 26, 2026, ICE transferred him again to the Cibola County Correctional Center in Milan, New Mexico, where he remains detained. (*See id.*; *see also* Doc. 17-1 at 1.)

On January 17, 2026, Petitioner was processed by DHS at the El Paso facility. (Doc. 17-2 at 2.) DHS records reflect that Petitioner had no prior immigration history and no pending applications with the U.S. Citizenship and Immigration Services (USCIS). (*Id.*) On January 29, 2026, DHS served Petitioner with a Notice to Appear charging him as removable under 8 U.S.C.

---

[2] DHS records list the "Apprehension Date" as January 11, 2026 (Doc. 17-2 at 1), though the Petition alleges the arrest occurred on January 10, 2026 (Doc. 1 ¶ 31).

§ 1182(a)(6)(A)(i) as a noncitizen "present in the United States without being admitted or paroled . . . ." (Doc. 17-1 at 1.)

On January 30, 2026, Petitioner filed a Petition for Writ of Habeas Corpus in the District of Minnesota, challenging the legality of his arrest and continued detention and seeking immediate release. (Doc. 1.) The Government Respondents filed a response on February 3, 2026, arguing that jurisdiction was improper in Minnesota and asserting that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2). (Doc. 6.) Petitioner filed a reply on February 5, 2026. (Doc. 7.)

On February 6, 2026, the District of Minnesota transferred the case to this Court under 28 U.S.C. § 1406(a). (Doc. 8.) On March 4, 2026, the undersigned ordered the Warden Respondents to answer. (Doc. 13.) The Warden Respondents timely filed their response on March 6, 2026. (Doc. 15.) The Government Respondents then filed a second response on March 13, 2026. (Doc. 17.) Petitioner filed a second reply on March 18, 2026. (Doc. 18.) The matter is now fully briefed and ready for disposition.

## II.     Legal Standard

Federal courts possess longstanding authority to review the legality of executive detention through the writ of habeas corpus. 28 U.S.C. § 2241 expressly authorizes courts to issue a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Tenth Circuit has recognized that "[c]hallenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001)).

The fundamental purpose of a § 2241 habeas corpus proceeding is to allow a detainee to challenge the legality of his custody and to secure release from unlawful detention. *See*

*Palma-Salazar v. Davis*, 677 F.3d 1031, 1035 (10th Cir. 2012). Because Petitioner challenges the legality of his continued detention, his claim falls squarely within the scope of § 2241.

No party has identified any factual dispute requiring an evidentiary hearing, and the issues presented are purely legal and fully briefed. As such, the existing record is sufficient to resolve the habeas petition.

### III.   Discussion

Petitioner challenges the legality of his detention on several related grounds. In his habeas petition, he asserts that DHS is detaining him under 8 U.S.C. § 1225(b)(2) despite his long-term residence in the United States, lack of criminal history, and the absence of any indication that he is an arriving alien or applicant for admission. (*See* Doc. 1 ¶¶ 27–31, 34–36.) Petitioner contends that § 1225(b)(2) does not apply to individuals apprehended in the interior after years of residence and that his custody is instead governed by 8 U.S.C. § 1226(a). (*See id.* ¶¶ 28, 47.) He further alleges that DHS has not provided the individualized custody determination required under § 1226(a) and that his continued detention without such a determination violates the Immigration and Nationality Act (INA) and the Administrative Procedure Act. (*See id.* ¶¶ 49–55.)

Petitioner also raises constitutional claims based on the circumstances of his warrantless arrest and continued detention, alleging that these actions were arbitrary and unsupported by the procedures required by due process. (*See id.* ¶¶ 56–67.) He further asserts that his transfer away from Minnesota to New Mexico has impeded his ability to communicate with counsel, in violation of the Fifth Amendment. (*See id.* ¶¶ 68–72.)

Respondents maintain that Petitioner is properly detained under § 1225(b)(2) as an applicant for admission and therefore subject to mandatory detention without bond. (*See* Doc. 17 at 3.) They acknowledge, however, that this District recently held in a factually similar case that

§ 1225(b)(2) did not apply where the petitioner had not taken any action indicating he was seeking admission. (*See id.* (citing *Garcia-Lopez v. Castro*, No. 2:25-cv-1144 JB/SCY, 2026 WL 524082 (D.N.M. Feb. 25, 2026)).)

Because the statutory framework determines the procedural protections that apply to Petitioner's detention, the Proposed Findings and Recommended Disposition (PFRD) first addresses whether § 1225 or § 1226 governs. The PFRD then turns to Petitioner's constitutional challenges, including whether his warrantless arrest and continued detention violate the Fourth Amendment.

For the reasons explained below, neither § 1225(b)(1) nor § 1225(b)(2) applies, and Petitioner's detention is governed by § 1226(a).

### A.    Detention Under § 1225 vs. § 1226

The detention of noncitizens prior to a final order of removal is governed by 8 U.S.C. §§ 1225 and 1226. *See Jennings v. Rodriguez*, 583 U.S. 281, 287–89 (2018). The statutory question here is whether Petitioner—who entered the United States in 2001 and lived openly in the interior since entry—is properly detained under § 1225(b)(2), a provision that applies only to noncitizens "seeking admission," or under § 1226(a), which governs the detention of noncitizens already present in the United States and which provides for the possibility of a bond hearing. *See id.* at 297, 303.

Respondents assert that "Petitioner is subject to mandatory detention under Section 1225(b)(2) because he was present in the United States without being admitted or paroled." (*See* Doc. 17 at 3 (citing 8 U.S.C. § 1225(b)(2)(A); *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 228 (BIA 2025)).) But Respondents also acknowledge that this District recently rejected that interpretation in a factually similar case. *See Garcia-Lopez*, 2026 WL 524082, at *34–35. As

explained herein, the undersigned recommends finding that the reasoning in *Garcia-Lopez* applies here. Under the statutory framework, and consistent with decisions in this District, Petitioner's detention is governed by § 1226(a), not § 1225(b)(2).

### 1.    Section 1225(b)(1) does not apply.

In *Garcia-Lopez v. Castro*, United States District Judge James O. Browning addressed the statutory basis for the federal government's detention of a long-term resident who, like Petitioner here, had lived in the United States for decades and was apprehended in the interior during an ICE encounter at a traffic stop. *See Garcia-Lopez*, 2026 WL 524082 at \*1. The court began by examining whether § 1225(b)(1) applied. The court first recognized that Garcia-Lopez was "an applicant for admission" because § 1225(a)(1) deems any noncitizen present in the United States without admission to be one. *See id.* at \*34 (citing 8 U.S.C. § 1225(a)(1)). But the court held that § 1225(b)(1) nevertheless did not apply because Garcia-Lopez was "not an arriving alien or an alien present in the United States continuously for less than two years at the time" of the inadmissibility determination. *Id.*

Petitioner's circumstances are materially identical. He entered the United States in 2001 and has lived here continuously for approximately 25 years. (*See* Doc. 1 ¶¶ 2, 6, 27.) Like in *Garcia-Lopez*, Petitioner is an "applicant for admission" because he entered the United States without inspection and has never been admitted or paroled, but he is neither an "arriving alien" nor a noncitizen present in the country for less than two years. Accordingly, § 1225(b)(1) does not apply.

### 2.    Section 1225(b)(2) does not apply.

The court in *Garcia-Lopez* next considered whether § 1225(b)(2) applied. The court held that it did not, because § 1225(b)(2) applies only to noncitizens who are both (i) "applicants for

admission" *and* (ii) "seeking admission." *Garcia-Lopez*, 2026 WL 524082, at *34–35. The court explained that "seeking admission" is an affirmative act—such as presenting at a port of entry, applying for adjustment of status, or otherwise requesting lawful entry—not a passive condition imposed by statute. *Id.* at *16–17, *35. Crucially, the court found that "[t]here [was] no indication that Garcia-Lopez ha[d] any pending application or ha[d] taken any other action which indicate[d] that he [was] actively seeking admission." *Id.* at *35.

The same is true here. Petitioner asserts that he "has not submitted any applications or taken any other action which indicates he is actively seeking admission . . . ." (Doc. 18 at 4.) DHS records confirm that Petitioner had no pending applications with USCIS and no prior immigration history at the time of his arrest. (*See* Doc. 17-2 at 2.) He was not at a port of entry and was not pursuing any form of lawful admission; he was simply driving on Interstate 94 in Minneapolis when ICE agents stopped and arrested him. (*See* Doc. 1 ¶ 31.) Under *Garcia-Lopez*, these facts foreclose the application of § 1225(b)(2). Petitioner is an "applicant for admission" only in the technical sense that § 1225(a)(1) deems all non-admitted noncitizens to be such. But he is not "seeking admission," and § 1225(b)(2) therefore does not apply.

### 3. Section 1226(a) governs Petitioner's detention.

Having rejected both § 1225(b)(1) and § 1225(b)(2), the court in *Garcia-Lopez* found that "the United States must detain [him] under § 1226(a)." *Garcia-Lopez*, 2026 WL 524082, at *35. Here, Petitioner is a long-term resident of the interior with no pending applications for admission and no conduct indicating that he is seeking admission. Under the statutory framework and relevant decisions from this district, § 1226(a) governs his detention.

Similarly, in *Cortez-Gonzalez v. Noem*, where a noncitizen had lived in the United States for nearly her entire life with no criminal history and was later arrested in the interior and charged

7

under § 1182(a)(6)(A)(i), the court rejected DHS's attempt to classify her detention under § 1225(b)(2)(A). *See Cortez-Gonzalez v. Noem*, 811 F. Supp. 3d 1287, 1295–97 (D.N.M. 2025). The court explained that § 1225(b)(2) applies only when a noncitizen is both an "applicant for admission" and "seeking admission," and that long-term residents who have taken no affirmative steps to request lawful admission are not "seeking admission" within the meaning of the statute. *Id.* at 1296–97. Because the statutory prerequisites for § 1225(b)(2) were not met, the court held that detention defaulted to § 1226(a). *Id.* at 1297. The same reasoning applies here: Petitioner has lived in the United States for years, was charged under § 1182(a)(6)(A)(i), and has made no affirmative request for admission. As in *Cortez-Gonzalez*, DHS's reliance on § 1225(b)(2) is inconsistent with the statutory text, and § 1226(a) governs his detention.

**B.    Petitioner's warrantless arrest and continued detention violate the Fourth Amendment and 8 U.S.C. § 1357(a)(2).**

Because § 1226(a) governs Petitioner's detention, the Court must also consider whether his arrest and continued detention comply with the Fourth Amendment and the statutory limits Congress imposed on warrantless immigration arrests. *See Salazar v. Dedos*, No. 1:26-cv-0251 WJ/JHR, 2026 WL 555336, at *5–6 (D.N.M. Feb. 27, 2026) (analyzing Fourth Amendment limits after concluding § 1226(a) governed). Although § 1226(a) permits the Attorney General to arrest noncitizens "on a warrant," the Supreme Court has clarified that § 1226(a) does not require a warrant in every case. *See Jennings*, 583 U.S. at 303 ("§ 1226(a) . . . permit[s] . . . but [does] not requir[e] . . . the Attorney General to issue warrants for the arrest and detention of noncitizens already present in the United States"); *see also* 8 U.S.C. § 1226(a). Thus, the question is not whether § 1226(a) mandates a warrant, but whether the Constitution and § 1357(a)(2) permit the warrantless arrest and continued detention at issue here.

The petition alleges that ICE agents stopped Petitioner on Interstate 94 based solely on his ethnicity, questioned him without reasonable suspicion, and arrested him without probable cause or a warrant, in violation of the Fourth Amendment and § 1357(a)(2). (*See* Doc. 1 ¶¶ 31–32, 42, 61.) Petitioner further alleges that agents had no basis to believe he was likely to escape before a warrant could be obtained, as the statute requires. (*Id.* ¶¶ 42, 61.) Respondents do not address these allegations in either of their filings. (Docs. 6; 17.)

      1.      **DHS lacked statutory authority to arrest Petitioner without a warrant.**

The INA authorizes warrantless immigration arrests only in narrow circumstances. Under 8 U.S.C. § 1357(a)(2), an immigration officer may arrest a noncitizen without a warrant only if the officer has "reason to believe" the person is violating the immigration laws and the person "is likely to escape before a warrant can be obtained . . . ." *See* 8 U.S.C. § 1357(a)(2). The statute also permits certain warrantless criminal-law arrests under § 1357(a)(5), but only when the offense occurs in the officer's presence or when the officer has reasonable grounds to believe a felony has been committed and there is a likelihood of escape before a warrant can be obtained. *See* 8 U.S.C. § 1357(a)(5)(A)–(B).

Courts have recognized that these warrantless-arrest authorities are strictly limited, particularly in the interior-arrest context.

In *Salazar v. Dedos*, the court rejected DHS's attempt to justify a warrantless interior arrest under § 1357 where none of the statute's narrow prerequisites were met. *See* 2026 WL 555336, at *5–6. Salazar had lived in the United States since infancy, had no criminal history, had never previously been in immigration custody, and was arrested by ICE in the interior without a warrant and without any contemporaneous criminal conduct. *See id.* at *1. The court emphasized that the INA authorizes warrantless immigration arrests only in "limited circumstances," specifically those

enumerated in § 1357(a)(2) and § 1357(a)(5), and it found that "[n]one of those circumstances" were present.[3] *See id.* at *5 (citing 8 U.S.C. § 1357(a)(2), (5)(A)–(B)). Because DHS lacked statutory authority to arrest Salazar without a warrant, the court held that the government was required to obtain a prompt judicial probable-cause determination. *See id.* at *6 (citing *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 57 (1991); *Gerstein v. Pugh*, 420 U.S. 103, 107–08 (1975)). DHS had obtained no such determination, and the record contained no evidence that officers had any basis to believe Salazar was likely to escape before a warrant could be obtained. *Id.* Given these facts, the court concluded that Salazar's continued detention was "unreasonable under the Fourth Amendment" and ordered his immediate release. *Id.*

Likewise, in *Gamez Lira v. Noem*, the court found that DHS's warrantless interior arrest of a long-term resident with active DACA status was unlikely to satisfy the narrow statutory limits of § 1357(a)(2) and (a)(5). *See Gamez Lira v. Noem*, No. 1:25-cv-0855 WJ/KK, 2025 WL 2581710, at *3–4 (D.N.M. Sept. 5, 2025). Although that case arose at the TRO stage, the court's statutory analysis was clear. Gamez Lira had lived in the United States since infancy, had no meaningful criminal history, was lawfully present under an active Deferred Action for Childhood Arrivals grant, and was arrested in his driveway by ununiformed officers who did not identify themselves and who, according to the petition, lacked a warrant. *See id.* at *1. DHS later issued a Notice to Appear (NTA) alleging that he was an "arriving alien," but the immigration judge found the NTA defective. *See id.* On this record, the court concluded that the INA authorizes warrantless arrests only in "limited circumstances," specifically those enumerated in § 1357(a)(2) and (a)(5),

---

[3] Section 1357(a)(2) permits a warrantless immigration arrest only when the officer has reason to believe the person is violating the immigration laws and the person is likely to escape before a warrant can be obtained. *See* 8 U.S.C. § 1357(a)(2). Section 1357(a)(5) permits certain warrantless criminal-law arrests only when the offense occurs in the officer's presence or when the officer has reasonable grounds to believe a felony has been committed, and there is a likelihood of escape before a warrant can be obtained. *See* 8 U.S.C. § 1357(a)(5).

and that "none of those circumstances" appeared to be present. *See id.* at *3 (citing 8 U.S.C. § 1357(a)(2), (5)(A)–(B)).[4] Because DHS lacked statutory authority to arrest Gamez Lira without a warrant, the court held that the government was required to obtain a prompt judicial probable-cause determination, which it had not done. *See id.* at *4 (citing *Cnty. of Riverside*, 500 U.S. at 57; *Gerstein*, 420 U.S. at 107–08). The court further noted that the record contained no evidence that officers had reason to believe Gamez Lira had engaged in criminal conduct or was likely to escape before a warrant could be obtained. *Id.* Given these deficiencies, the court found a substantial likelihood that the arrest and continued detention violated the Fourth Amendment and issued a temporary restraining order to preserve jurisdiction. *Id.* at *4–5.

The record here contains no evidence that DHS obtained or served a warrant. DHS's own encounter records confirm that no warrant was issued or served at the time of Petitioner's arrest. (*See* Doc. 18 at 1–2 (citing Doc. 17-2 at 1 ("Warrant served by Warrant Service Officer (WSO)? N/A")).) Respondents do not dispute this fact, and they offer no evidence that a warrant existed or that any statutory exception applied.[5] (*See* Docs. 6; 17.)

Nothing in the record suggests that either statutory condition—reasonable belief of a violation or likelihood of escape—was met. Petitioner was stopped while driving on Interstate 94 in Minneapolis, had lived in the United States for decades, and had no criminal history. (*See* Docs.

---

[4] The *Gamez Lira* opinion cites "§ 1357(a)(5)(A)–(5)," which does not correspond to an existing subsection. *See Gamez Lira*, 2025 WL 2581710, at *3. The context makes clear that the court was referring to § 1357(a)(5)(A)–(B), and this brief uses that formulation for clarity. *See* 8 U.S.C. § 1357(a)(5).

[5] Petitioner first raised the warrant-related defect in the habeas petition filed in the District of Minnesota. (*See* Doc. 1 ¶¶ 31, 42, 61.) The Government Respondents filed a response in that court but did not address the argument, and Petitioner noted this omission in his reply. (*See* Docs. 6; 7 at 5.) After transfer to this District, the Court directed the Warden to state his position on the petition. (*See* Doc. 13.) The Warden responded that he had no involvement in Petitioner's immigration proceedings and took no position on the requested relief. (*See* Doc. 15.) The Government Respondents then filed an additional response, even though the Court's order directed only the Warden to respond, and again did not address the warrant issue. (*See* Doc. 17.) Accordingly, the record contains no explanation from Respondents regarding whether a warrant existed or whether any statutory exception applied.

11

1 ¶ 31; 17-2 at 2.) Respondents do not argue that Petitioner was "likely to escape" or that any § 1357(a)(2) exception applied. (*See* Docs. 6; 17.) As in *Salazar* and *Gamez Lira*, the record contains no facts that would satisfy § 1357(a)(2) or (a)(5)'s narrow prerequisites for a warrantless arrest. *See Salazar*, 2026 WL 555336, at *5 ("None of those circumstances appears to have been present in this case."); *Gamez Lira*, 2025 WL 2581710, at *4 (same).

### 2.    DHS failed to obtain a prompt judicial probable-cause determination

Even when a warrantless arrest is permissible, the Fourth Amendment requires a prompt judicial determination of probable cause. *See Salazar*, 2026 WL 555336, at *6 ("Absent obtaining a warrant, the government was required to secure a prompt judicial probable cause determination to justify [his] continued detention.") (citations omitted).

Respondents obtained no such determination here. They do not contend otherwise. (*See* Docs. 6; 17.) As in *Salazar*, the record contains no evidence that DHS had probable cause to believe Petitioner had engaged in criminal conduct or that any judicial officer ever reviewed the basis for his detention. *See* 2026 WL 555336, at *6 ("Respondents obtained no probable cause determination. Nor does it appear . . . that they could have . . . .").

### 3.    Petitioner's continued detention is unconstitutional.

DHS lacked statutory authority to arrest Petitioner without a warrant under § 1357(a)(2) or (a)(5), and DHS never obtained a prompt judicial probable-cause determination. For both reasons, Petitioner's arrest and continued detention are unreasonable under the Fourth Amendment. *See id.*; *see also Gamez Lira*, 2025 WL 2581710, at *4. Accordingly, Petitioner's continued detention is unconstitutional and he must be released.

This conclusion is reinforced by a growing body of decisions holding that when DHS detains a noncitizen under § 1226(a) without a warrant and without satisfying § 1357(a)(2), the

detention is unlawful from the outset and immediate release is required. In *Singh v. Bondi*, the Western District of Oklahoma confronted nearly identical facts: a long-term resident arrested in the interior without a warrant, initially detained under § 1225(b)(2), and later determined to fall under § 1226(a). *See Singh v. Bondi*, No. 26-cv-43 J, 2026 WL 483651, at * 1–2; *12 (W.D. Okla. Feb. 12, 2026), *R&R adopted*, 2026 WL 483482 (W.D. Okla. Feb. 20, 2026). The court concluded that "[b]ecause Petitioner was improperly detained pursuant to § 1226(a), his instant detention was unlawful from the moment it began," and recommended immediate release. *Id.* at *12 (citing *E.P.G. v. Bondi*, No. 26-560 (JRT-EMB), 2026 WL 242266, at *1 (D. Minn. Jan. 29, 2026); *Chogllo Chafla v. Scott*, 804 F. Supp. 3d 247, 264 (D. Me. 2025)). These decisions reinforce the principle that when DHS cannot meet the statute's requirements for a warrantless arrest, continued detention is unlawful and release is the only permissible remedy.

**C.**        **Immediate release is required under the Fourth Amendment; in the alternative, petitioner is entitled to a prompt bond hearing under § 1226(a).**

The Fourth Amendment violation here is indistinguishable from the violations in *Salazar* and *Gamez Lira*. DHS lacked statutory authority to arrest Petitioner without a warrant, and DHS failed to obtain a prompt judicial probable-cause determination. Under these circumstances, the appropriate remedy is immediate release. *See Salazar*, 2026 WL 555336, at *6 (ordering immediate release where warrantless § 1226(a) detention violated the Fourth Amendment); *Gamez Lira*, 2025 WL 2581710, at *4 (finding petitioner likely to succeed on Fourth Amendment claim where DHS lacked § 1357(a)(2) authority and obtained no probable-cause determination). The undersigned therefore recommends that the Court order Petitioner's immediate release.

Even if the Court declines to order Petitioner's immediate release based on DHS's failure to obtain a warrant, the Court should grant habeas relief in the alternative by ordering an individualized bond hearing under § 1226(a). Petitioner is, at minimum, entitled to the procedural

13

protections that accompany detention under § 1226(a). *See Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)) ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention"). Petitioner has never received such a hearing. Indeed, Respondents' reliance on § 1225(b)(2) foreclosed any opportunity for Petitioner to seek release before an immigration judge.

Courts in this District have repeatedly ordered individualized bond hearings where, as here, a petitioner was apprehended in the interior and found to be detainable under § 1226(a). *See, e.g.*, *Pu Sacvin v. De Anda-Ybarra*, No. 2:25-cv-1031 KG/JFR, 2025 WL 3187432, at *2–3 (D.N.M. Nov. 14, 2025) (ordering bond hearing after concluding petitioner was properly detained under § 1226(a)); *Camac-Huanca v. Noem*, No. 2:25-cv-1253 KWR/JFR, 2026 WL 357651, at *6–7 (D.N.M. Feb. 9, 2026) (same); *Gutierrez v. Garcia*, No. 2:25-cv-1145 WJ/KRS, 2026 WL 310064, at *5–6 (D.N.M. Feb. 5, 2026) (same); *Velasquez Salazar v. Dedos*, No. 1:25-cv-0835 DHU/JMR, 2025 WL 2676729, at *5–6 (D.N.M. Sept. 17, 2025) (same).

Petitioner urges the Court to go further and require DHS to bear the burden at that hearing, arguing that the Government must "show by clear and convincing evidence that continued detention of Petitioner is necessary to prevent flight or danger to the community." (*See* Doc. 18 at 5–6.) The Court should decline to impose such a requirement in light of its recent decision in *Castillo v. De Anda-Ybarra*, 2:25-cv-1074 JB/JFR, 2026 WL 370497 (D.N.M. Feb. 10, 2026). There, the court sustained the Government's objection to a magistrate judge's recommendation that the burden shift to DHS at a § 1226(a) bond hearing. *Castillo*, 2026 WL 370497 at *41–42. The court held that, although habeas is an appropriate vehicle to challenge detention without any hearing, it is not a mechanism for restructuring the evidentiary burdens applicable at a bond hearing unless the existing process is so one-sided that noncitizens have no meaningful chance of securing

14

release. *Id.* at 42. The court concluded that the current § 1226(a) framework—under which the noncitizen bears the burden to show he is not a flight risk or danger—does not rise to that level, and therefore the Court lacked authority on habeas review to reallocate the burden of proof. *Id.*

Accordingly, if the Court does not order immediate release, the undersigned recommends that the Court direct Respondents to provide Petitioner with an individualized bond hearing before a neutral immigration judge. If Respondents fail to provide such a hearing, Petitioner should be released.

### D.    Petitioner's Remaining Claims

### 1.    Access to Counsel Claim

Petitioner alleges that his transfer from Minnesota to New Mexico has interfered with his ability to communicate with counsel and to meaningfully participate in his removal proceedings. (*See* Doc. 1 ¶¶ 37–38, 68–72.) Respondents do not address this allegation. (*See* Docs. 6; 17.)

Petitioner cites two out-of-circuit decisions in support of his assertion that his transfer violated a constitutional right to counsel and to a full and fair removal hearing, but neither case stands for the propositions he advances. (*See id.* ¶¶ 69–70.) In *Al Khouri v. Ashcroft*, the Eighth Circuit reaffirmed that due process entitles a noncitizen to a "full and fair hearing" in removal proceedings. *See* 362 F.3d 461, 464 (8th Cir. 2004) (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993); *Castaneda–Suarez v. INS*, 993 F.2d 142, 144 (7th Cir. 1993); *Plyler v. Doe*, 457 U.S. 202, 210 (1982)). But the case did not involve transfer, detention location, or distance from counsel. Instead, the due-process violation arose from the immigration judge's failure to adequately develop the record for a pro se asylum applicant—including curtailing testimony, limiting his ability to explain his claim, and giving him only minutes to review a lengthy application—which rendered the hearing fundamentally unfair. *See id.* at 464–66.

15

Likewise, the holding in *United States v. Torres-Sanchez* does not recognize a constitutional right to counsel in removal proceedings. *See* 68 F.3d 227, 230 (8th Cir. 1995) (citing *United States v. Campos–Asencio*, 822 F.2d 506, 509 (5th Cir. 1987); *Acewicz v. United States Immigr. & Nat. Serv.*, 984 F.2d 1056, 1062 (9th Cir. 1993); *Nazakat v. Immigr. & Nat. Serv.*, 981 F.2d 1146, 1148 (10th Cir. 1992)). Rather, the Eighth Circuit held that the right to representation in deportation proceedings is statutory, not constitutional, and that a due-process violation based on denial of counsel requires both a procedural error and a showing of prejudice. *See id.* at 230–32. The court ultimately concluded that the petitioner in that case knowingly waived his statutory right to counsel. *Id.* at 231–32.

Neither decision recognizes a constitutional right to be detained in any particular facility, nor do they hold that transfer or physical distance from counsel violates due process. And unlike the petitioners in those cases, Petitioner here identifies no specific prejudice arising from his transfer. Moreover, the record does not support Petitioner's assertion that the transfer has impaired his ability to communicate with counsel. To the extent Petitioner suggests that the transfer deprived him of representation, that allegation is moot. His retained counsel has continued to represent him throughout the transfer, has filed multiple submissions on his behalf, and remains counsel of record. (*See* Docs. 1 at 22; 7 at 9; 7-1; 11; 18 at 6.) Petitioner identifies no missed filings, missed hearings, or other concrete prejudice arising from the transfer.

Even if Petitioner had identified a constitutional violation, his transfer-based claim falls outside the scope of relief available under 28 U.S.C. § 2241. Habeas corpus is limited to challenges to the legality of custody and to securing release from unlawful detention. *See Palma-Salazar*, 677 F.3d at 1035 ("the traditional function of the writ is to secure release from illegal custody") (quoting *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997)). The Supreme

16

Court has likewise emphasized that habeas "simply provide[s] a means of contesting the lawfulness of restraint and securing release." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 117 (2020).

Because Petitioner's transfer-based allegations fall outside the scope of habeas review and do not provide an independent basis for relief under § 2241, this claim should be dismissed.

### 2.      Administrative Procedure Act Claim

Petitioner also asserts that DHS's application of § 1225(b)(2) to deny him a bond hearing is "arbitrary, capricious, and not in accordance with law" in violation of the Administrative Procedure Act. (Doc. 1 ¶¶ 52–55.) This claim does not provide an independent basis for relief. Courts in this District have held that an individualized detention determination—such as DHS's classification of a detainee under § 1225(b)(2) or its refusal to provide a bond hearing—is not "final agency action" within the meaning of the APA. *See Gamez Lira*, 2025 WL 2581710, at *4 (citing *Hamilton v. Gonzales*, 485 F.3d 564, 569 (10th Cir. 2007)).

Accordingly, to the extent Petitioner seeks relief under the APA, that claim should be denied.

### E.      Administrative Exhaustion

Respondents contend that Petitioner "must first exhaust his administrative remedies" by requesting a bond hearing before the immigration court. (*See* Docs. 17 at 2; 17-4 at 2, 10–11.) That argument is misplaced. Exhaustion is not required where the agency has predetermined the outcome or where the administrative process is incapable of providing the relief sought.

First, neither the INA nor § 2241 expressly imposes a statutory exhaustion requirement for noncitizens challenging the legality of their detention. *See Castro v. Noem*, No. 1:25-cv-1129 KWR/LF, 2026 WL 280470, at *3 (D.N.M. Feb. 3, 2026) (citing *Gonzalez v. O'Connell*, 355 F.3d

17

1010, 1016 (7th Cir. 2004)). Although the Tenth Circuit applies an exhaustion requirement in § 2241 cases, it "recognize[s] a 'narrow exception'" where exhaustion would be futile. *Id.* (quoting *Garza v. Davis*, 596 F.3d 1198, 1203–04 (10th Cir. 2010)).

To be sure, here, exhaustion is futile. Petitioner alleges—and Respondents do not dispute— that he has been given no opportunity to seek bond. (*See* Doc. 1 ¶¶ 50–55.) Respondents' own filings confirm futility: they maintain that immigration judges categorically lack jurisdiction to provide § 1226(a) bond hearings to noncitizens DHS has classified under § 1225(b)(2)(A)— including Petitioner. (*See* Doc. 17-4 at 2, 4, 7–10.) To get to this position, Respondents rely on *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), which directs immigration judges to deny bond requests for noncitizens DHS classified under § 1225(b)(2)(A). (*Id.* at 2.) Under the agency's own interpretation, any request by Petitioner for a bond hearing would have been automatically denied for lack of jurisdiction.

Courts in this district have consistently held that *Hurtado* renders exhaustion futile in precisely these circumstances. *See, e.g.*, *Pu Sacvin*, 2025 WL 3187432, at *2 (exhaustion futile where IJ lacked jurisdiction under *Hurtado*); *Castro*, 2026 WL 280470, at *3 (same); *Francisco v. Dedos*, No. 1:25-cv-1229 MIS/GJF, 2026 WL 145456, at *7–8 (D.N.M. Jan. 20, 2026), *R&R adopted*, 2026 WL 300319 (D.N.M. Feb. 4, 2026) (same). As these courts have recognized, requiring a petitioner to pursue a remedy the agency has already declared unavailable would serve no purpose and would only delay judicial review. Because the administrative process could not have provided Petitioner any avenue for release, habeas review is both appropriate and necessary.

18

**F.      EAJA Attorney Fees**

Petitioner's prayer for relief includes a request for "[r]easonable attorney fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A)." (Doc. 1 at 22.) The Equal Access to Justice Act (EAJA) provides that:

> [A] court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).

The Tenth Circuit has confirmed that the EAJA "unambiguously authorize[s] fees in habeas actions challenging immigration detention." *Daley v. Ceja*, 158 F.4th 1152, 1166 (10th Cir. 2025).

At this stage, however, Petitioner's request is premature. A party becomes eligible to seek EAJA fees only after entry of a final judgment, and an EAJA motion does not ripen until the time for appeal has expired. *See* 28 U.S.C. § 2412(d)(1)(B), (d)(2)(G); *see also Melkonyan v. Sullivan*, 501 U.S. 89, 96 (1991). Because no final judgment has been entered, Petitioner is not yet a prevailing party for EAJA purposes.

Even if the request were ripe, the undersigned would recommend denying EAJA fees because the government's position was substantially justified. "The test for substantial justification is 'one of reasonableness in law and fact.'" *Garcia-Lopez*, 2026 WL 524082, at *35 (quoting *Hackett v. Barnhart*, 475 F.3d 1166, 1172 (10th Cir. 2007)). The government's position is substantially justified if it is "justified to a degree that could satisfy a reasonable person." *Id.* (quoting *Hackett*, 475 F.3d at 1172.) A position may be substantially justified even if it is

19

ultimately incorrect. *Id.* (quoting *Hackett*, 475 F.3d at 1172). And substantial justification exists where reasonable people could disagree about the appropriateness of the government's action. *Id.* (citing *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).

Applying that standard, Judge Browning held that the government's position was substantially justified where the relevant legal question was unsettled, courts across the country had reached conflicting conclusions, and at least one Court of Appeals had adopted the government's view. *Id.* at *36. The same is true here. The central statutory question—whether detention in these circumstances is governed by § 1225 or § 1226—remains unsettled, and courts have reached conflicting conclusions. As the court in *Garcia-Lopez* points out, several district courts have adopted the government's interpretation. *See, e.g., Vargas Lopez v. Trump*, 802 F. Supp. 3d 1132 (D. Neb. 2025); *Chavez v. Noem*, 801 F. Supp. 3d 1133 (S.D. Cal. 2025); *Mejia Olalde v. Noem*, No. 1:25-cv-0168 JMD, 2025 WL 3131942 (E.D. Mo. Nov. 10, 2025). And the Fifth and Eighth Circuits have likewise embraced the government's view. *See Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *Avila v. Bondi*, --- F.4th ----, No. 25-cv-3248, 2026 WL 819258 (8th Cir. Mar. 25, 2026). At the same time, the Seventh Circuit has reached the opposite conclusion. *See Castanon-Nava v. DHS*, 161 F.4th 1048 (7th Cir. 2025). Given this unsettled landscape, the government's position had a reasonable basis in law and fact.

Accordingly, even if Petitioner were eligible to seek EAJA fees at this stage, the undersigned would recommend denying such fees because the government's position was substantially justified.

## IV.    Conclusion

For the reasons stated above, the undersigned **RECOMMENDS** the following:

1.  The Petition for Writ of Habeas Corpus (Doc. 1) should be **GRANTED IN PART** on the grounds that Petitioner's warrantless arrest and continued detention violate the Fourth Amendment and exceed DHS's statutory authority under 8 U.S.C. § 1357(a)(2).

2.  The Petition should be **DENIED IN PART** as to Petitioner's Administrative Procedure Act claim, because it does not provide an independent basis for habeas relief; and **DISMISSED IN PART** as to Petitioner's transfer-based access-to-counsel claim, because it falls outside the scope of habeas review.

3.  The Court should **ORDER** Petitioner's immediate release because DHS lacked statutory authority to arrest him without a warrant and failed to obtain a prompt judicial probable-cause determination, rendering his continued detention unconstitutional.

4.  In the alternative, if the Court declines to order immediate release, the Court should **ORDER** Respondents to provide Petitioner with an individualized bond hearing before a neutral Immigration Judge within seven days of the Court's order, and to file a status report within ten days confirming that the hearing has occurred or that Petitioner has been released.

5.  If no bond hearing is held within **seven days**, the Court should **ORDER** Petitioner's immediate release unless and until the Government demonstrates that continued detention is lawful under 8 U.S.C. § 1226(a).

6.  The Court should retain jurisdiction over this matter to decide any future motion for an award of reasonable attorney's fees and costs under the EAJA.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
DAMIAN L. MARTINEZ
UNITED STATES MAGISTRATE JUDGE